22 C. C. P. A. (Patents)

## SNEED v. McCONKEY. *

### Patent Appeal No. 3459.

Court of Customs and Patent Appeals.
April 15, 1935.

Richey & Watts, of Cleveland, Ohio (Donald A. Gardiner, of Washington, D. C., and F. M. Bosworth, of Cleveland, Ohio, of counsel), for appellant.

*Rehearing denied June 3, 1935.

F. Bascom Smith, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences and awarding priority to the party McConkey upon two counts of an interference, which read:

"1. In a brake, the combination of a shoe having an inwardly extending flange, an adjuster for changing the effective length of said shoe having a slot in which said flange fits, screw means for moving said adjuster in one direction and spring means for moving said adjuster in the opposite direction when said screw means is released.

"2. In apparatus of the class described the combination of a brake shoe having an inwardly extending flange, an adjusting member adapted to engage said flange and to extend circumferentially beyond one end of said shoe, and screw means adapted when turned in one direction to move said adjusting member to increase the effective length of said shoe and when turned in the opposite direction to allow said adjusting member to be moved to decrease the effective length of said shoe."

The interference was declared May 15, 1931, between a patent, No. 1,789,392, issued to Sneed January 20, 1931, upon his application, serial No. 390,663, filed September 6, 1929, and an application of McConkey, serial No. 520,800, filed March 7, 1931, as a division of his then pending prior application, serial No. 339,000, filed February 11, 1929.

The Sneed patent seems to have been assigned to the Midland Steel Products Company, as trustee for Steeldraulic Brake Corporation. The applications of McConkey stand assigned to the Bendix Brake Company, for which company McConkey seems to have been a regularly employed patent attorney at the time of the filing of the applications and for a number of years previously.

McConkey was given the benefit of his filing date of serial No. 339,000, February 11, 1929, for reduction to practice. This is not in issue before us, and McConkey, therefore, stands in the position of senior party with the burden of proof resting upon Sneed whose filing date was approximately six months later.

Both tribunals of the Patent Office agreed in awarding to McConkey the date of October 5, 1927, for conception, approximately the date claimed by him in his preliminary statement. This award is not here challenged and the date is prior to any date of conception at any time seriously claimed by the party Sneed.

McConkey made no claim of reduction to practice earlier than the filing date of application, serial No. 339,000, February 11, 1929. Sneed originally claimed reduction to practice on or about December 15, 1928. Subsequently, after the respective preliminary statements of the parties had been opened and certain proof had been taken, he moved to amend so as to claim a date "prior to September 1, 1928." His motion so to do was denied by the Examiner of Interferences and does not seem to have been presented to the Board of Appeals. It is not made an issue here.

The Examiner of Interferences said: "It is held that Sneed has established the construction and successful operation of a device satisfying the counts as early as September 1, 1928. He is therefore accorded this date for conception. For reduction to practice he is restricted to December 15, 1928, the date alleged in his statement."

The Examiner of Interferences further found that McConkey was lacking in diligence from just prior to the time of Sneed's entrance into the field until his (McConkey's) filing date of February 11, 1929, and hence awarded priority to Sneed.

Upon appeal, the Board of Appeals, while finding that Sneed probably conceived "in the latter part of 1928, namely, from an uncertain time before September 1, until December," held that the evidence failed to show any reduction to practice at any time prior to the filing date of McConkey, and, holding that since McConkey was the first to conceive and the first to reduce to practice, it was "unnecessary to consider any question of diligence on McConkey's part," reversed the decision of the examiner, and awarded priority to McConkey.

It is proper to recite that the particular feature of the combination involved in the counts that is of importance here is, as stated in the brief on behalf of Sneed, the feature of "an adjuster arranged to co-

act with the inwardly extending portion or leg of a T-section brake shoe," and the primary question to be determined is whether the evidence on behalf of Sneed, upon whom the burden of proof rests, is sufficient to establish that he reduced a brake containing this feature to practice as early as December 15, 1928, or at least prior to February 11, 1929, the date of McConkey's constructive reduction to practice.

While there is a somewhat elaborate record in the case, including a number of physical and documentary exhibits, the testimony relating to Sneed's reduction to practice at some time prior to McConkey's filing date is exclusively oral; no drawings or other documentary or physical exhibits produced by or for him during the critical period having been presented.

The oral evidence upon the point at issue on behalf of Sneed is contained in his own testimony and in that of Mr. Chas. E. Gable and Mr. Gordon Stoner. This testimony was taken in 1932, beginning the latter part of April of that year, which was more than three years subsequent to the activities relied upon to establish the reduction to practice claimed.

Sneed seems to have been quite a prolific inventor, his testimony being to the effect that he had made about 160 applications for patents. Just how many of these related specifically to brakes does not appear. He was president of the Steeldraulic Brake Corporation and, early in 1927, entered the employ of the Midland Steel Products Company shortly after the latter became the licensee of the former. His employment continued until "very near the Summer of 1929." It was after his employment began that the Midland Steel Products Company commenced the manufacture of vehicle brakes.

Gable was sales engineer for the Steeldraulic Brake Corporation, and he also became an employee of the Midland Steel Products Company in 1926 or 1927, working under the direction of a Mr. Bob Wallace until the latter left the company, and continuing thereafter apparently as successor to Wallace.

Stoner, at the time of testifying, was assistant to the president with the power of general manager of the Midland Steel Products Company, having been with the company from the time of its organization.

The testimony seems fairly to establish that in the first brakes produced and placed upon the market by the Midland Steel Products Company under its license from the Steeldraulic Brake Company, the brake shoe was made "channel shaped or of U-section to lend it rigidity," and also that there was a heavy malleable iron part in the adjusting mechanism at one end of the shoe.

Each of the witnesses heretofore named testified that these' brakes gave trouble on account of rattling, and it is claimed that, being confronted with this difficulty, Sneed, in the fall of 1927, began an attempt to solve the problem, which attempt culminated in brakes corresponding to the counts, a set of which are alleged to have been installed upon a car belonging to Sneed and to have been used thereon prior to September 1, 1928. Gable testified that the set was put on the car "about May 1928 and was taken off after Mr. Wallace left, which was around October, that is the latter part of 1928." There is evidence indicating that more than one set of brakes may have been, at different times, installed upon Sneed's car; but this evidence is lacking in definiteness and clarity, and there is a dearth of testimony as to the question of actual successful operation of any of the brakes claimed to have been so installed.

The testimony of Stoner is not positive that he, in fact, ever saw the brakes on Sneed's car, although he seems quite certain as to an installation of some character of brake in December, 1928.

The event principally relied upon by Sneed to aid his recollection as to the time when the brakes were installed upon his personal car seems to have been that of the retirement of Wallace from the company's employ. Referring to work alleged to have been done on the adjuster in the summer of 1928, he testified: "* * * I cannot fix that date accurately because there was no record made of it, no official record, and there were no outstanding events at that period which would fix the date in my memory, but I can state that it was quite a while, I think perhaps two or three months, before the first of September, 1928, because this job had been operated on my personal car for quite a while before Mr. Wallace left Midland Steel Products Company, and that date was September 1, 1928."

Gable seems to have relied upon three events for aid to his recollection, viz.: (1) A move of the experimental department of the plant, which, he says, took place in April, 1928; (2) the retirement of Wal-

lace which, upon cross-examination, he fixed as of November 1, 1928; and (3) his observation of a certain drawing filed as Sneed's Exhibit 17, which bears date of January 23, 1929.

It is proper to say that Gable testified that the drawings and prints, made after what we have designated the critical period, were made from brakes that had actually been produced before the drawings and prints were produced.

In its decision the Board of Appeals comments upon the uncertainty disclosed by the record as to the date when Wallace actually left the employ of the company, and refers to the discrepancy in this regard between the testimony of Sneed and Gable; the former placing it as of September 1, 1928, and the latter as of November, 1928.

It is argued on behalf of appellant, in effect, that this uncertainty and the discrepancy are not material since a reduction to practice even prior to November, in the absence of diligence on the part of McConkey, is sufficient to enable Sneed to prevail.

We are inclined to the belief that, in view of the burden resting upon Sneed and in view of the fact that he relies solely upon oral testimony to meet that burden, the record should have been made more clear upon this point. It would seem that, assuming the whereabouts of Wallace to have been unknown so that he was not available as a witness, the time might have been definitely fixed by the records of the company.

But, even if it be conceded that this is not particularly material, we feel constrained to agree with the further and more important finding of the Board of Appeals to the effect that the evidence is not sufficiently specific as to the fact of the brakes, assumed to have been placed upon Sneed's car, being successfully operated.

It is quite true, as was said in effect by this court in the case of Frank Jardine and Ferdinand Jehle v. Elmer C. Long, 58 F.(2d) 836, 19 C. C. P. A. (Patents) 1243, that oral testimony alone may be relied upon to establish the facts essential to show reduction to practice of an invention. Nevertheless, such testimony must be scrutinized with great care and it must be quite clear and convincing.

The following comment of the Board of Appeals we regard as accurate and timely: "There is no testimony in the record concerning the extent of any tests or as to any results whether satisfactory or not nor is it clear that one certain model of brake was on the car long enough to warrant a conclusion that it was probably satisfactory. It is not conclusively shown that a brake embodying the screw adjuster at that time claimed to have been put on cars was reasonably successful either in the ordinary operation of the brakes in driving the car or successful in the operation of making adjustment for wear. Uncertainty in this relation is increased by the fact that Sneed, Q. 34, appears to state that during this period three different brakes were on his car while Gable appears to indicate only one, namely, before September 1st and Stoner only one or broadly that a set of these brakes were running in December 1928. The fact if true that three different modifications were tried during this period appears to indicate that the device was still being experimented with and was not considered to be satisfactorily operative. This, we think, taken with the fact that no showing as to successful tests or operations is furnished, fails to afford sufficient ground for finding reduction to practice."

The record has been examined with care, with the result that we regard the decision of the Board of Appeals as correct, and the same is affirmed.

Affirmed.